Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington

November 12, 2020

WILLIAM M. McCOOL, Clerk

By _____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>VICKI BOSER,<br><br>Defendant. | NO. CR20-194 JLR<br><br>**INDICTMENT** |

The Grand Jury charges that:

### COUNTS 1-5
### (Wire Fraud)

Beginning at a date uncertain, but not later than February 2014, and continuing through at least December 2016, in Snohomish County, within the Western District of Washington, and elsewhere, the defendant, VICKI BOSER, knowingly devised and intended to devise a scheme and artifice to defraud her clients, insurance brokers, and premium financing companies, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and omissions.

**A.   Background**

1. At all relevant times, BOSER was a Washington resident insurance agent and producer who owned, operated, and was the "Designated Licensed Person Responsible" for InsuranceTek, Inc., a Washington company formed by BOSER in 2003 ("InsuranceTek"). InsuranceTek assisted small businesses that work in high-risk fields –

including private investigators, process servers, mortgage and field service companies, and security guard companies – in securing insurance policies to cover their business operations. InsuranceTek employed approximately six employees, comprised of other insurance agents and administrative staff, but BOSER exercised control over the company and gave final approval for all of InsuranceTek's business.

2. When a business needs an insurance policy with higher limits or broader coverage than standard insurers provide, it can obtain that coverage by working with a surplus insurance brokerage, which finds insurance carriers willing to provide such policies. It is a common practice for an insurer that provides this kind of policy to require that a business prepay an entire insurance premium at the beginning of a policy. Due to the high-risk nature of the industries that InsuranceTek's clients operated within, BOSER generally had to work with surplus insurance brokerages to find insurance carriers that would be willing to provide policies to InsuranceTek's clients. BOSER and InsuranceTek earned commissions for the insurance policies that they assisted clients in obtaining.

3. InsuranceTek's clients were often required to prepay their insurance premiums at the beginning of their policies. Often, the client would pay the entire premium to BOSER, who would then collect InsuranceTek's commission and remit the payment to the surplus insurance brokerage to secure the client's insurance policy. The surplus insurance brokerage would then remit the payment to the insurance carrier that ultimately insured the client.

4. If one of InsuranceTek's clients could not afford to prepay the entire insurance premium to secure a policy, the client could secure financing for the premium through a loan from a premium financing company. The premium financing company either paid the premium directly to the surplus insurance brokerage, or BOSER could have the premium financing company send the loaned money directly to InsuranceTek, which would then remit the payment directly to the surplus insurance brokerage to secure the client's insurance policy. The client would then be expected to make monthly

payments to the premium financing company to satisfy the loan. If the client did not make its monthly payments, the premium financing company could request that the client's insurance policy be cancelled.

5. Under Washington law, all funds that BOSER received from InsuranceTek clients that represented premiums on their policies were received in her fiduciary capacity, and those funds had to be "promptly accounted for and paid to the insured, insurer, title insurance agent, or insurance producer as entitled thereto." RCW § 48.17.480.

6. At all times relevant to this Indictment, InsuranceTek's offices were located in Snohomish County, Washington.

7. The victims of BOSER's scheme and artifice to defraud were a number of her clients who were businesses located across the United States. Victim Business One was an Illinois-based property inspection business. Victim Businesses Two, Three, and Four were businesses that maintained foreclosed homes based in Ohio, Texas, and Tennessee, respectively. BOSER's scheme and artifice to defraud also caused losses to several surplus insurance brokerages and premium financing companies. In all, BOSER's scheme and artifice to defraud caused her victims to lose in total at least $750,000.

**B.     Manner and Means**

8. It was part of the scheme and artifice to defraud that VICKI BOSER collected funds from InsuranceTek's clients, and from premium financing companies on behalf of InsuranceTek's clients, under false and fraudulent pretenses, representations, promises, and omissions.

9. It was further part of the scheme and artifice to defraud that BOSER collected insurance premiums from InsuranceTek's clients that she received in a fiduciary capacity and was required to promptly remit to surplus insurance brokerages to secure clients' insurance policies. The clients provided the money to BOSER with the understanding that it would be used to secure an insurance policy for their business, and

would not have provided the money to her otherwise. BOSER, however, did not remit the clients' payments to brokerages or carriers to secure the clients' insurance policies.

10. It was further part of the scheme and artifice to defraud that BOSER entered into insurance premium financing agreements in her clients' names without their knowledge or authorization, to pay for premiums that had already been paid in full by the clients or financed in other ways. BOSER did not inform her clients of the financing agreements that she took out in their names and did not provide them with the money that she received as a result of these agreements. BOSER then defaulted on paying the financing agreements, often resulting in the cancellation of a client's policy without the client's knowledge.

11. It was further part of the scheme and artifice to defraud that BOSER created fake Certificates of Insurance that she sent to clients to make it appear as if they were covered by a valid insurance policy, when in reality the client's business was not insured because BOSER had failed to remit payment to a surplus insurance brokerage to secure the policy.

12. It was further part of the scheme and artifice to defraud that BOSER improperly transferred clients' premium payments from a business account meant to hold such funds and separate them from all other business and personal funds, and into her personal bank account, where they were used to pay BOSER's personal expenses.

C. **Execution of the Scheme and Artifice to Defraud**

13. On or about the dates set forth below, in Snohomish County, within the Western District of Washington, and elsewhere, BOSER, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions, transmitted and sent, and caused to be transmitted and sent, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, including the following transmissions, which are discussed in more detail below:

| Count | Date | Victim | Wire Transmission |
|---|---|---|---|
| 1 | 11/17/2015 | Victim Business One | An electronic funds transfer in the amount of $32,279.95 from an American Chartered Bank account number ending in -8259 to InsuranceTek's Bank of America account ending in -2380, for an insurance premium payment for a 2015-2016 policy. |
| 2 | 02/09/2016 | Victim Business Two | An electronic funds transfer in the amount of $6,657.40 from a U.S. Bank account ending in -8308 to InsuranceTek's Bank of America account ending in -2380, for an insurance premium payment for a 2016-2017 policy. |
| 3 | 03/01/2016 | Victim Business Three | An electronic funds transfer in the amount of $50,000 from an American National Bank of Texas account ending in -9757 to InsuranceTek's Bank of America account ending in -2380, for an insurance premium payment for a 2016-2017 policy. |
| 4 | 04/01/2016 | Victim Business Three | An electronic funds transfer in the amount of $103,321 from an American National Bank of Texas account ending in -9757 to InsuranceTek's Bank of America account ending in -2380, for an insurance premium payment for a 2016-2017 policy. |
| 5 | 04/11/2016 | Victim Business Four | An electronic funds transfer in the amount of $26,447.11 from a Brand Bank account ending in -0423 to InsuranceTek's Bank of America account ending in -2380, in payment from a financing company pursuant to a financing agreement. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

All of the allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture. Upon conviction of an offense charged in Counts 1 through 5, the defendant VICKI BOSER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of

Indictment/BOSER – 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Title 28, United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the offense. This property includes but is not limited to a sum of money reflecting the proceeds the defendant obtained from the offense.

**Substitute Assets.** If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or,

    e.    has been commingled with other property which cannot be divided without difficulty,

//
//
//

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL:

DATED: 11/12/2020

*Signature of foreperson redacted pursuant to the policy of the Judicial Conference of the United States*

FOREPERSON

BRIAN T. MORAN
United States Attorney

S. KATE VAUGHAN
Assistant United States Attorney

LYNDSIE R. SCHMALZ
Assistant United States Attorney